KENSEY (BRONSON v.). See Case No. 1,-927.

KENSINGTON, The (HARRIS v.). See Case No. 6,122.

KENSINGTON, The (MARINERS v.). See Case No. 9,085.

---

## Case No. 7,714.

### KENT v. DAWSON BANK.

[13 Blatchf. 237.] [1]

Circuit Court, S. D. New York. Jan. 13, 1876.

DRAFT— TRANSMISSION FOR COLLECTION — LIABILITY OF COLLECTING BANK—COMMERCIAL LAW.

1. A bank in Illinois, owning a draft drawn on one W., in Washington, North Carolina, transmitted it by mail to a bank at Wilmington, North Carolina, with directions to collect and remit the returns. W. resided 170 miles from Wilmington. The Wilmington bank credited the draft to the Illinois bank, and entered it for collection, and so advised the latter by a letter mailed at Wilmington, and then sent the draft to B., a banker at Washington, who was its correspondent and collecting agent there. B. collected the draft. but failed before remitting the amount to the Wilmington bank, although in good credit when the draft was sent to him. In a suit brought by the assignees of the Illinois bank against the Wilmington bank to recover the amount of the draft: *Held*, that the plaintiff was entitled to recover.

[Cited in Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 282, 5 Sup. Ct. 143.]

[Cited in Bank of Lindsborg v. Ober. 31 Kan. 606. 3 Pac. 324: Power v. First Nat. Bank. 6 Mont. 251, 12 Pac. 597; City Bank of Sherman v. Weiss, 67 Tex. 331, 3 S. W. 299.]

2. The contract of the defendant was made in North Carolina, and to be wholly executed there, and was not governed by the law of Illinois. but by that of North Carolina.

[Cited in Matthews v. Murchison, 17 Fed. 768.]

3. The question of the liability of the defendant for the default of B. is an open one, so far as any statute or judicial decision in North Carolina is concerned, to be determined by the general principles of commercial law.

4. An undertaking to "collect" is not merely an undertaking to select a suitable agent, and

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

transmit the paper to him to collect as agent for the owner, but is an undertaking to respond for any default of the agent selected.

[Cited in Cummins v. Heald, 24 Kan. 600.]

[This was an action at law by Elmore A. Kent against the Dawson Bank.]

Arthur, Phelps, Knevals & Ransom, for plaintiff.

Scudder & Carter, for defendant.

WALLACE, District Judge. The plaintiff, as assignee of the Corn Exchange National Bank, of Chicago, Illinois, brings this action to recover of the defendant the amount of a draft sent to the defendant for collection. A draft drawn upon one Wiswall, of Washington, North Carolina, and owned by the Corn Exchange National Bank, was transmitted by mail by the latter to the defendant, at Wilmington, North Carolina, with directions to collect and remit the returns. The residence of the drawee was distant from the defendant's place of business 170 miles. Upon receipt of the letter from the Corn Exchange National Bank, the defendant replied, stating, in substance, that the draft had been credited to the Corn Exchange National Bank and entered for collection; and thereupon the defendant transmitted the draft to Burbank & Gallagher, bankers at Washington, N. C., who were the correspondents and collecting agents of the defendant at that place. Burbank & Gallagher collected the draft, but failed before remitting the amount to the defendant, and the proceeds passed to their assignees in bankruptcy. They were in good credit at the time the draft was forwarded to them by the defendant.

Two questions arise upon these facts: First—are the rights of the parties to be determined by the law of Illinois or by that of North Carolina? Second—is the defendant liable for the default of Burbank & Gallagher. on the theory that they were its agents and it was responsible for their miscarriage, or, is it exonerated, on the theory that its duty towards the Corn Exchange National Bank was discharged upon transmitting the draft, with proper directions, to competent and responsible agents at the drawee's place of residence?

If the rights of the parties are to be governed by the law of Illinois, the plaintiff cannot recover, as the adjudications of the highest court of that state settle the question involved in favor of the defendant. Fay v. Strawn, 32 Ill. 295; Aetna Ins. Co. v. Alton City Bank, 25 Ill. 243. It is urged, for the defendant, that the contract between the parties originated by the letter enclosing the draft mailed at Chicago, and was not complete until the Corn Exchange National Bank received the letter of the defendant in reply, acknowledging the receipt of the draft and assuming to undertake its collection, and was, therefore, wholly made in the

state of Illinois. The sufficient answer to this position is, that the proposition of the Corn Exchange National Bank to the defendant, expressed by the letter of the latter, was assented to at the place where the defendant mailed its letter in reply, and then became obligatory upon the parties. Irrespective of this test, the contract was one which was to be wholly executed in the state of North Carolina. The place of performance of a contract is generally a controlling consideration by which to determine the lex loci contractus, and where, as here, the contract was both made in North Carolina and was to be performed there, it is clear that the case must be controlled by the law of that state. It is not claimed that any statute exists in the state of North Carolina which affects the rights of the parties, or that the courts of that state have passed upon the direct question here, but the testimony of experts, lawyers of that state, has been produced, by which it appears, that the question is yet an open one, to be determined by the general principles of commercial law, as recognized by that state in common with the other states of the Union. The question, then, is, whether, upon the facts, the bank receiving the paper becomes the agent of the owner to make collection, and is liable for any miscarriage on the part of the agent to whom it delegates that duty, or whether it becomes the agent of the owner to transmit the paper, with proper instructions, to another, to collect it as an agent for the owner, and is liable only for negligence in the selection of the agent; and this is to be determined by this court according to its own convictions, in the light of precedent and principle.

In the decisions of questions of commercial law, the federal courts do not feel bound to adhere to the course of adjudications in the courts of the state in which the action is tried. It is to be regretted that a uniform rule should not have been adopted by the courts upon a question of such importance, and one that so frequently arises; but it will be seen that it is involved in a hopeless conflict of authorities. In New York and Ohio, and in England, the adjudications are, that the receiving bank is the agent of the owner to make collection, and liable for the default of the sub-agent to which it transmits the paper (Allen v. Merchants' Bank, 22 Wend. 215; Montgomery Co. Bank v. Albany City Bank, 3 Seld. [7 N. Y.] 463; Reeves v. State Bank, 8 Ohio St. 465; Van Wart v. Woolley, 3 Barn. & C. 439; Mackersy v. Ramsays, 9 Clark & F. 818); while, in Connecticut, Massachusetts, Pennsylvania, and Illinois, the contrary doctrine is asserted (East Haddam Bank v. Scovil, 12 Conn. 303; Fabens v. Mercantile Bank, 23 Pick. 330; Dorchester & Milton Bank v. New England Bank, 1 Cush. 177; Mechanics' Bank v. Earp, 4 Rawle, 384; Aetna Ins. Co. v. Alton City Bank, 25 Ill.

243; Fay v. Strawn, 32 Ill. 295). No decision upon the question, of which I am aware, has been made by the courts of the United States, though the case of Bank of Washington v. Triplett, 1 Pet. [26 U. S.] 25, is referred to in several of the decisions as one in point; but that case differs essentially from this, because, there, it was conceded that the draft was sent to the receiving bank to be by it transmitted to a sub-agent for collection, and the action was brought by the owner of the draft against the sub-agent. In many of the cases referred to, the liability of the receiving bank was predicated upon the theory that the sub-agent was its agent, and not the agent of the owner of the paper, while, in others, liability was denied upon the theory that the sub-agent was the agent of the owner. Accordingly, the same conflict of adjudication exists where the question has arisen whether the owner of the paper can maintain an action against the sub-agent for the latter's default in making collection, or whether his only remedy is against the receiving bank by whom the paper is transmitted to the sub-agent (Montgomery Co. Bank v. Albany City Bank, 3 Seld. [7 N. Y.] 463; Commercial Bank v. Union Bank, 11 N. Y. 203); while, in some of the cases, the conclusion is reached that the owner has his election to proceed against either (Wilson v. Smith, 3 How. [44 U. S.] 763). In this confusion of precedent, and in the absence of any decision which should be held controlling upon this court, it only remains for me to adopt such a conclusion as to my judgment seems best to accord with principle; and, in view of the very elaborate discussion of the question involved, to be found in several of the cases cited, I do not deem it necessary to do more than indicate some of the reasons which lead me to dissent from the doctrine that the receiving bank is exonerated from liability if it transmits the paper with proper instructions to a suitable agent. The cases which exonerate the bank from liability under such circumstances, rest their conclusions upon the supposed intention of the parties to the transaction, and insist, that, when the paper is to be collected at a place distant from the bank to which it is sent, the fair presumption is, that the parties do not intend that the receiving bank shall collect by its own officers or employees, but shall transmit to another agent to perform that duty. The first objection to this position is, that it is inconclusive, because it fails to determine the vital question, whether it is to be presumed the parties intend that the ultimate agent shall be the agent of the receiving bank or the agent of the owner of the paper; and the doubt thus presented has found expression not only in the cases cited, but in others, where the question was, whether the bank is liable for the default of a notary to whom it delivers paper to protest. Ayrault v. Pacific Bank,

47 N. Y. 570; Citizens' Bank v. Howell, 8 Md. 530; Bowling v. Arthur, 34 Miss. 41; Agricultural Bank v. Commercial Bank, 15 Miss. [7 Smedes & M.] 592. The second objection is, that this presumption cannot be indulged without violence to the terms by which the parties have defined the character of the act to be performed. The owner sends the paper with instructions to collect it, and the receiving bank assumes to act upon these instructions. The undertaking, then, would seem to be one to collect, in the sense in which that term is used when applied to a bank or financial agent, rather than an undertaking to select a suitable agent for the owner. Some effect must be given to the language of the instructions. If it is intended that the receiving bank shall select an agent for the owner, it would seem that the instructions would naturally direct the bank to forward the paper for collection. The implication contended for requires the interpolation of other language into the instructions than that used. That which seems to me the reasonable one is in harmony with the language of the parties, while it is no more repugnant to the presumptions raised by the situation of the parties and the instrumentalities the undertaking may require. If the facts imply an undertaking on the part of the receiving bank to collect the paper, rather than one to transmit it to another to collect it as an agent for the owner, I can see no reason why the receiving bank should not be liable to the same extent as it would be if one of its immediate employees received and appropriated the money. The difficulty is in fixing the character of the undertaking. I know of no exception to the rule, that, when one, as principal, contracts to fulfill a duty towards another, he is liable for any default, whether on his own part or that of those to whom he delegates the duty. The cases where a bailee is not liable for the miscarriage of his agents or servants are not exceptions to the general rule, for, there, the implied contract is only to exercise ordinary care, and if, in selecting the agents, this duty has been fulfilled, the implied contract is satisfied.

For these reasons, I am of opinion that judgment should be rendered for the plaintiff, and it is ordered accordingly.