(11 Misc. Rep. 286.)

## DALE v. HEPBURN.

(Common Pleas of New York City and County, General Term. February 4, 1895.)

COLLECTING AGENCY—EMPLOYMENT OF ATTORNEY—COMPENSATION.
    A collecting agency, in whose hands a draft was placed by defendant for collection, employed plaintiff, an attorney in the city where the debtor resided, with directions to collect and remit the proceeds to the agency, after deducting a specified fee. Plaintiff had no correspondence with defendant in regard to the matter. *Held*, that the collecting agency acted as principal, and not as agent for defendant, in employing plaintiff, and therefore defendant was not liable to compensate plaintiff for his services.

Action by Samuel E. Dale against Louisa H. Hepburn to recover for legal services alleged to have been rendered by plaintiff for defendant. The complaint was dismissed at the close of the trial, and plaintiff moves for a new trial on exception ordered to be heard at general term in the first instance. Denied.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

J. Noble Hayes, for plaintiff.
William S. Cogswell, for defendant.

BOOKSTAVER, J. This action was brought to recover the value of legal services alleged to have been rendered by plaintiff as the attorney for the defendant, on her retainer, in proceedings had in the circuit court of the United States for the Northern district of Illinois. The answer denies the retainer, and that the plaintiff rendered her any services. At the close of the plaintiff's case a motion to dismiss was denied, and a similar motion made at the close of the trial was granted, on the ground that no cause of action was made out against the defendant, and this raises the principal question to be considered. From the evidence it appears that Hubbell & Co. is a collection agency in this city, whose business it is to collect all kinds of claims, as well as notes, drafts, and other negotiable instruments; that defendant, through her agent, placed a draft drawn by Lewis E. Parsons on L. F. Hepburn, and paid by her, in their hands for collection, and agreed to pay them certain fees therefor; that thereupon Hubbell & Co. retained plaintiff as their attorney to take proceedings in Chicago to collect the claim for them, and remit proceeds to them after deducting his fees, the amount of which was specified in a circular accompanying the retainer; that plaintiff was acquainted with one of the Hubbells, and had had previous business transactions with the concern; that plaintiff had no understanding with Mrs. Hepburn in regard to compensation; that he had no correspondence with her in regard to the action; that all of plaintiff's correspondence was with the Hubbells; that he applied to them for compensation for his services; that when he gave a consent for substitution to Mr. Garrett in September, 1888, he did not then present any claim against the defendant, although he did underwrite the consent as follows: "Without waiving any rights regarding my position

heretofore as attorney for the plaintiff in said suit, I consent to the above substitution;" that the first notice defendant had of any claim was when she was served with the summons and complaint in this action in the fall of 1889; that the only bill for his services which plaintiff ever sent to any one was sent to Hubbell & Co. It also appears that defendant's son acted as her agent in all of these transactions, and that whatever he did was done with Hubbell & Co., and that in the course of these dealings he knew that the plaintiff was the attorney of record in the action commenced in the state of Illinois. Under such a state of facts, it is clear that the plaintiff was acting on a retainer from Hubbell & Co., and not from the defendant, and the question of her liability depends upon whether or not Hubbell & Co. were merely her agents in the transaction, or were themselves principals, and we think there can be no doubt but that they were principals. Under the name of an agency, they were conducting a collecting business on their own account. They would be responsible to the defendant for the collection of the money, not as agent, but as principal. So they are responsible to the plaintiff for any services rendered by him to them. They undertook to collect the note, and not merely to employ agents for the defendant to do so. This has been expressly decided in Hoover v. Greenbaum, 61 N. Y. 305, otherwise known as Hoover v. Wise, 91 U. S. 308. After reviewing all of the authorities, the majority of the court say:

"We are of the opinion that these authorities fix the rule in the class of cases we are now considering, to wit, that of attorneys employed, not by the creditor, but by a collection agent who undertakes the collection of the debt. They establish that such attorney is the agent of the collecting agent, and not of the creditors who employed that agent."

In Bank v. Gilman, 81 Hun, 487, 30 N. Y. Supp. 1111, it is said:

"In some other jurisdictions it has been held to be within the implied authority of the collecting agent, when paper is to be collected at some place remote from that of the business, for such agent to employ a subagent in that locality to make collection on account of the owner. But in this state the rule is otherwise, and, in the absence of any understanding or agreement to the contrary, it is to the effect that the collecting agent is deemed to employ such other collector on his own account. Thus the collecting agent becomes chargeable to his principal for the conduct of the bank or individual to whom he transmits the paper for collection."

In this case the evidence is clear that there was no understanding or agreement on the part of the defendant about the employment of the plaintiff for or on her account or as her attorney, but, in our judgment, it is conclusive that he was employed by the Hubbell agency in the course of their business as a collecting agency. We think that if banks into whose care negotiable instruments are placed for collection are regarded as principals, so much the more should a collecting agency, whose sole business it is to collect claims placed in its hands, be so regarded. We are aware that the liability of banks in such case has been much discussed, and that there is a great conflict of authority on the subject. It has been held, on the one hand, that the bank first receiving the paper is answerable for the neglect, omission, or other misconduct of the bank or agent it may employ, following the general rule of law that an agent is liable

for the acts of a subagent employed by him. This is the doctrine established by the decisions of the supreme court of the United States, of this state, New Jersey, Ohio, Indiana, and the courts of England. Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 276, 5 Sup. Ct. 141; Allen v. Bank, 22 Wend. 215; Smedes v. Bank, 20 Johns. 384; Montgomery County Bank v. Albany City Bank, 7 N. Y. 459; Commercial Bank v. Union Bank, 11 N. Y. 203; Ayrault v. Bank, 47 N. Y. 570; Titus v. Bank, 35 N. J. Law, 588; Reeves v. Bank, 8 Ohio St. 465; Tyson v. Bank, 6 Blackf. 225; Abbott v. Smith, 4 Ind. 452; Kent v. Bank, 13 Blatchf. 237, Fed. Cas. No. 7,714; Van Wart v. Woolley, 3 Barn. & C. 439; Mackersy v. Ramsay, 9 Clark & F. 818. In 112 U. S. 276, 5 Sup. Ct. 141, Judge Blatchford said:

"The bank is not merely appointed an attorney authorized to select other agents to collect the paper. Its undertaking is to do the thing, and not merely to procure it to be done. In such case the bank is held to agree to answer for any default in the performance of its contract, and whether the paper is to be collected in the place where the bank is situated, or at a distance, the contract is to use the proper means to collect the money, and the bank, by employing subagents to perform a part of what it has contracted to do, becomes responsible to its customer."

In 35 N. J. Law, 588, Chancellor Zabriskie said:

"A dealer, who deposits a draft on a distant city in a bank in his own town, has no choice of their agent or correspondent. It is the business of the bank to provide proper agents or correspondents for this service, when they adopt it, as most banks do, as a part of their regular business. If they have no such correspondent they should refuse to take paper for collection, and then the holder could choose whether he would leave it for transmission. He would then be led to inquire about the agent to whom it would be transmitted. The English and New York rule is much better adapted to the convenient dispatch of business. It is no hardship on the bank. It can always look to its correspondent bank, to which transmission is made, for indemnification from its negligence."

But it is held, on the other hand, that the liability of a bank, under such circumstances, extends merely to the selection of a suitable and competent agent at the place of payment, and to the transmission of the proper instructions, and that the corresponding bank is the agent of the holder, and that the transmitting bank is not liable for the default of its correspondent, when selected with due care. This view has been adopted by the courts of Massachusetts, Connecticut, Pennsylvania, Illinois, Louisiana, and Missouri. Mr. Morse, in his work on Banks, approves of the latter doctrine (Morse, Banks, 2d Ed., 414); while Mr. Daniel, in his work on Negotiable Instruments, maintains the doctrine established by the courts of this state (1 Daniel Neg. Inst., 3d Ed., § 342). Whatever the views of the courts of other states may be, the liability of the bank receiving the paper to the owner is too well established in this state to need further discussion. It therefore follows that the learned judge who tried this case properly dismissed the complaint, and the judgment entered thereon should be affirmed, with costs. All concur.