BENJAMIN C. HARVEY, Plaintiff, *v.* F. W. DODGE CORPORATION and J. HENRY SWEIBACK Doing Business as BARCLAY COLLECTION BUREAU, Defendants.

Municipal Court of New York, Borough of Manhattan, Sixth District, December 5, 1938.

*Allen H. Suffern,* for the plaintiff.

*J. R. Levinson,* for the defendant F. W. Dodge Corporation.

*I. M. Greene,* for the defendant J. Henry Sweiback.

WHALEN, J. Plaintiff, a lawyer, sues to recover the reasonable value of professional services rendered and disbursements made in connection therewith. In so far as the evidence discloses, none of the parties ever met personally and the controversy has arisen out of a series of letters exchanged.

In October, 1929, Sweiback, operating the collection agency, forwarded a sixty-dollar claim of the Dodge Corporation to plaintiff for collection " over C. L. L. A. rates subject to usual division." Plaintiff two weeks later reported that he could not collect and advised suit, saying, " We will do so [start suit] on receipt of an advance of $10.00 charging a reasonable fee for services rendered." Sweiback replied three weeks later, in November, 1929, saying, " Client authorizes suit in view of yours of recent date and we herewith attach check for $10.00 covering costs required." No different terms were mentioned. On December 8, 1929, Sweiback forwarded the original written contract on which the claim was based and plaintiff commenced suit against the debtor in the Supreme Court, Westchester county, entering judgment by default on March 14, 1930, in the sum of $90.19, including $25.46 costs.

Execution was issued to the sheriff and returned unsatisfied on April 3, 1930.

Plaintiff then wrote asking for instructions as to supplementary proceedings, stating, " For this procedure we will need a further advance of $10.00 or we may proceed on a fee of one-third net to us." On April 22, 1930, Sweiback replied: " In line with yours of April 8th, which we submitted to client for their attention, they advise us that they would prefer to have you proceed with supplementary proceedings on the basis of fifty per cent with usual division. Kindly proceed at once, etc."

Thereafter plaintiff served an order for the examination of the judgment debtor which he ignored and a motion was made to punish him for contempt. He thereafter appeared and was examined December 19, 1930. No assets were found and nothing has ever been collected on the claim.

The next letter in evidence is one from plaintiff to another lawyer representing Sweiback, dated June 27, 1936, evidently in reply to a letter asking for the closing of the matter. It was in part as follows:

" I cannot return the above claim and close my file without a fee for services in placing the claim in judgment and examination of judgment debtor in supplementary proceedings.

" I am handling the matter on a contingent fee of fifty percent, one-third to you. * * * If clients wish to dispose of the matter, I will accept $10.00 net to me. * * * If client does not wish to pay any fee, I will retain the matter, making reports to you yearly or immediately on any favorable developments."

To this apparently Sweiback acquiesced. Next we have a series of letters beginning in May, 1937, and becoming acrimonious until the final letter of July 30, 1937, in which Sweiback said his client would not pay the two dollars expense money plaintiff asked for a further examination of the debtor, and said that the defendants would not pay anything more because plaintiff had the case on a contingent fee basis.

Plaintiff then sued the Dodge Corporation for $65.48, amended at the trial to $95.48, on the theory that he had been discharged without cause. Later he added Sweiback as a defendant.

The Dodge Corporation interposes as defenses: (1) The Statute of Limitations; (2) that the contingent fee contract was illegal; (3) that under the contract nothing was due to plaintiff unless he recovered on the claim.

Defendant Sweiback answers with a general denial and the Statute of Limitations.

Plaintiff testified that his disbursements were $15.06, the first item on December 23, 1929, and the last on April 28, 1930.

The contingent fee contract was probably champertous and illegal under the ruling in *Matter of Newman* (172 App. Div. 173).

The illegality may be shown under a general denial. (*Cary* v. *Western Union Tel. Co.*, 47 Hun, 610.) However, the answer to that is that plaintiff is not suing on the contract, but on a *quantum meruit*. This apparently he may do even if we assume that the agreement was champertous. (*McCoy* v. *Gas Engine & Power Co.*, 152 App. Div. 642.) Our highest court has not passed definitely on this point. (See discussion in *Matter of Gilman*, 251 N. Y. 265, at p. 272.)

Under a contract for a contingent fee, if an attorney is discharged without cause his right to sue on *quantum meruit* therefor arises and the time of the Statute of Limitations does not begin to run until that moment.

There is nothing in the correspondence to show that the plaintiff agreed to pay the expenses out of his own pocket, and there is authority to the effect that when a client refuses to co-operate with his attorney in advancing necessary disbursements the attorney is justified in withdrawing and suing for his fee. (*Tenney* v. *Berger*, 93 N. Y. 524.)

If the contract be considered a nullity because illegal, it appears that in June, 1936, defendants acquiesced in plaintiff's continuation of his efforts and he testified that he made inquiries about the judgment debtor after 1930 and as late as 1937, so that in my opinion the statute has not run.

No case has been cited to me nor have I been able to find one dealing with the question as to how long an attorney may hold a

claim of this kind and refuse to give it up. I should think he could be required to relinquish it after a reasonable time, and six years would be more than a reasonable time if the defendant had not only acquiesced in his retaining it but also actually requested him in 1937 to follow up the debtor because of certain information then furnished. This is an additional circumstance that makes it clear to me that the statute has not run.

Defendant Dodge urges the point that it is not liable in any event because of a ruling that the collection agency above in a case of this character is the employer of and liable to the attorney, citing *Dale* v. *Hepburn* (11 Misc. 286; affd., 154 N. Y. 763).

The authority of that case has been destroyed I think by section 270 of the Penal Law (Laws of 1898, chap. 165), as amended in 1917, which makes it unlawful for any one except an attorney to furnish an attorney or counsel to others. Moreover, in this case the facts are quite different from the *Dale* case. Here the Dodge Corporation expressly authorized the retaining of the attorney and an attorney and client relationship undoubtedly arose, when Dodge forwarded the original contract and suit was commenced in its name by plaintiff. (*Matter of Newman, supra.*)

This reasoning urged by plaintiff, however, it seems to me destroys his case against the defendant Sweiback. Sweiback was the agent of a disclosed principal and in such a case the agent is not liable unless he expressly makes himself so. There is nothing in the correspondence to indicate such an intention.

I have come to the conclusion that the Dodge Corporation is certainly liable to plaintiff for his disbursements and also for a reasonable fee. What is a reasonable fee in this case? According to the agreement plaintiff originally made, whether illegal or not, in the event of complete success he would not earn more than twenty dollars plus his disbursements. Should he receive more now when there has been a failure to recover anything?

I think if we accept the plaintiff's own estimate of the value of his services, namely, ten dollars, as stated twice in his letters of June 27, 1936, and May 8, 1937, before he had become embittered enough to bring suit, justice will be done.

My conclusion is the plaintiff is entitled to judgment against the Dodge Corporation in the sum of ten dollars plus disbursements of fifteen dollars and six cents, making a total of twenty-five dollars and six cents from which will be deducted ten dollars received on account, leaving a balance of fifteen dollars and six cents for which judgment may be entered.

The complaint will be dismissed on the merits as against defendant Sweiback.